JOHN MEADS and MARGARET SCHUYLER, administratrix, &c.
            of DAVID SCHUYLER, deceased.

                              v.

            HARMANUS LANSINGH, and others.

Bill in usual form for the foreclosure of a mortgage, for one thousand dollars :
   defence that the bond and mortgage were not made to secure any money ; but
   to secure the reconveyance of a certain other lot of land, which the mortga-
   gee had conveyed to the mortgagor, for a special object, and which was to
   be reconveyed.   This defence was supported by no writing and only by pa-
   rol proof, and by circumstances ;  and no fraud, accident, mistake, or surprise
   alleged.
The parol testimony over ruled.
It can not be introduced defensively ;  nor as proving an independent collateral
   agreement.   The cases in which oral testimony has been admitted to control
   written instruments, are not to be further extended.

1824.          THE bill was for the foreclosure of the equity of redemp-
April 9, 10,
and 12.    tion in a mortgage for one thousand dollars executed by Jere-
           miah Lansingh, deceased, on the 13th January 1816, to Da-
*Parol testi-* vid Schuyler, also deceased, on a lot of land in Pearl street in
*mony.*     Albany, which mortgage had been assigned to the complain-
ant Meads, as security for five hundred dollars.

       The principal defendants are, the widow and children of
Jeremiah Lansingh ; and they set up in their answer, a defence
in substance to this effect :

       That Jeremiah Lansingh having occasion to borrow of the
state, the sum of $1000, but having no unincumbered property,
applied to David Schuyler his particular friend, who to as-
sist him, conveyed to him a lot of land belonging to him,
(Schuyler) here designated as the State street lot, by way of
loan ; and that Lansingh's bond and the mortgage on the
Pearl street lot, upon which the bill was grounded, were not
executed for any debt or amount of money actually due or
payable to Schuyler, but merely to secure the reconveyance

to him of the State street lot; that Lansingh did mortgage the latter lot to the state for one thousand dollars, which though over due, is yet unpaid; but the defendants offer to pay it off, and to reconvey the lot; and insist that no reconveyance has ever been demanded, and no interest has ever been paid.

All of the defendants belonging to the family of Lansingh, who were of such age as to understand the transaction, state their personal knowledge of it as aforesaid; and particularly his son the defendant Harmanus says, that the money was borrowed by reason of pecuniary embarrassments, in which he himself was involved, and therefore he personally knew it to be as alleged; and several of the defendants state, that after the death of Lansingh, and before that of Schuyler, the latter had often acknowledged it to be so, and in one instance had desired them for that reason, to pay taxes on the lot. The defendants also state several other circumstances to corroborate this account : in particular, that the State street lot was estimated as worth three thousand dollars at the time of the conveyance ; that the comptroller required the lands mortgaged, to be worth double the amount lent, and therefore Schuyler could not be supposed to have sold it for one thousand dollars, the amount of the mortgage to him. They add, that the same lot is not now worth more than three hundred and fifty dollars, and that the Pearl street lot was worth at the time, about four thousand eight hundred dollars, over and above all prior incumbrances. Several of the defendants say, they think there was a writing expressing the above agreement, and one of them believes that Schuyler acknowledged he had it among his papers ; but they all admit, that no such writing can be found among the papers of Lansingh; and they admit, that no particular time was fixed for the reconveyance of the lot. The mortgage to Schuyler, was payable in two years from date.

In subsequent parts of the answer, several of the defendants of the family of Lansingh, went on to show, how their respective interests in the property in question had been divested ; and they then disclaimed.

A replication was filed, and these defendants were exam-

1824.

MEADS
v.
LANSINGH.

ined as witnesses, and their testimony if competent and cred-ible, supported the case as set up in the answer. It was not however, admitted by the complainant to be sufficient.

The question of the admissibility of those witnesses, under the particular circumstances of the case, affecting their inter-est, was very elaborately discussed by counsel. But that part of the case and of the argument, is purposely omitted, it being intended to confine the report to so much of the case only, as was embraced by the final decision.

The main question therefore, was that of the admissibility of parol testimony to prove the defendants' case.

MESSRS. VAN VECHTEN and BALDWIN, for the complain-ants.

The defence set up, is matter of avoidance, the burden of proving which, rests on the defendants.

Even if the witnesses were competent, the rule of law is, " that parol evidence is inadmissible, to supply or contradict, " to enlarge or vary, the words of a will, or of other instru-" ments in writing." Rob. on Frauds, 2d. Am. ed. 11., but it has bee.ı received to explain and elucidate them, ib.

This is a bond for the payment of money only, and a mortgage stating the receipt of one thousand dollars of mon-ey, acknowledging it as a debt, and containing a condition for repayment, and a power of sale in case of default. The pa-rol evidence is to show, that there was no debt; that no mon-ey has been received, or was to be repaid ; but that the real intent was to secure the reconveyance of a lot of land. This contradicts the express terms of the writings, in all particu-lars. It substitutes a totally different contract ; and as to the land, it turns an absolute conveyance with full covenants, in-to a loan. There is no authority which goes to this extent.

[The counsel then went into a critical examination of the cases decided, on this subject ; and the principles to be dedu-ced from them. They cited and examined Stevens v. Cooper, 1 John. ch. 425. Mann v. the executors of Mann, ib. 231.; 14 John. 1 and 339. ; 1 John. ch. 128. 339. ; 2 John. ch. 415. 557. ; and the English authorities on the same head. As the decision of the court adopted the principle here urged, it seem-ed the less necessary to detail this part of the argument.]

Parol evidence has indeed, been admitted, to show mistake or fraud in a deed, or loss of papers, but with great caution, and has only been available, when very clear and strong. 2 John. ch. 27. 585. 630.; 1 John. ch. 594.; 4 John. ch. 16, and in every case, the error or fraud must be distinctly set up in the bill, so as to be issuable and prevent surprise; there is no allegation of that kind, in this bill.

It is said that parol proof may be admitted in the cases of fraud, mistake, accident or surprise. Which of those is the present case? Does the intimacy of the parties, or their mutual confidence form an other exception? The evidence offered, is an example of the very mischief intended to be avoided.

So parol evidence is not admissible, to vary the consideration expressed in a deed, nor to raise a resulting trust when the deed is executed in pursuance of a written agreement, 1 John. 139.; 6 John. ch. 111. Neither can a party's own declarations be given in evidence to defeat his title. 16 John. 306.; Ca. temp. Hard. 304. They also cited the English authorities, collected in 1 Phillips' ev. 480, and Rob. on Frauds, 10. They urged further, that there is a want of mutuality in the parol agreement alleged. Lansingh might either pay one thousand dollars, or reconvey the land; but Schuyler had no such option, nor if the defence is allowed, can he ever enforce his remedy on the mortgage, at all.

Parol evidence is inadmissible to compel a performance in specie. 1 John. ch. 430. The very argument, that the parol agreement may be used defensively, implies that Schuyler was without remedy. He could never set up the parol agreement, but must have waited for the other party to file his bill for redemption.

This case is far different from that, where an absolute deed is proved to have been made, to secure a loan. There the fact of a loan may be proved; but here they seek to alter the whole agreement. We on the contrary do not, as in that case, attempt to defraud the other party.

It is admitted in argument on the other side, that in a certain event, (that of redemption by Schuyler) this mortgage was to operate, as a mortgage. This statement is not found in the answer, or proof, but it admits much. If in any event

it was to be a mortgage, what was that event? Was it, if Lansingh should not redeem within the time? or how is that to be converted into an agreement, before the day of payment, which was to become a mortgage afterwards? Was this mortgage for one thousand dollars, the only security which Schuyler took, for the reconveyance of a lot worth three thousand dollars, and that lot liable to judgments and to sales? It is security and no security.

It is said that Lansingh was in embarrassed circumstances, and could not contemplate a purchase of three thousand dollars; but if so Schuyler knew it; and would he then commit his property to him without competent security? Admit the parties acted upon that mutual confidence, which is alleged; will that take the case out of the rule, or is there any remedy? But they knew the necessity of written instruments, and they made them.

It is said to be agreeable to natural equity, that Schuyler should receive back his lot depreciated, as it is, in value. But Lansingh has had the benefit of it, by getting the loan. Suppose it had had valuable buildings on it, which had been burnt. Schuyler was to be indemnified at least, to the extent of one thousand dollars. They have kept the property several years, for their own benefit. It was for them to tender a reconveyance; the duty and burden of performance rested on them.

The cases where this court withholds its aid upon a defence grounded on parol testimony, are cases, where the court is called upon to give relief in addition to, or beyond what the common law would give, in the same case; as in bills for specific performance. There the common law would give a remedy in damages; but equity grants more.

In these cases, the complainant must come with clean hands. But what is that pollution, which will repel him from this court? It must be some foul management; not merely that the agreement differs from the intent. Here is no pretence of fraud. The integrity of the original parties, is mutually admitted. Here we must have the relief we ask, or we are without remedy. The cases cited, to show that a mortgage may be discharged, or a deed be proved to be an escrow by

parol, do not impugn our doctrine. They do not contradict the agreement, but prove that no such exists. Payment is a parol discharge; it is a matter of fact. So as to delivery, and the like.

1824.

Meads
v.
Lansingh.

The lot has depreciated. In case its value had been enhanced, could Schuyler have compelled a reconveyance? Suppose the mortgage to the state, had been foreclosed, or that Lansingh had created additional incumbrances, where would have been Schuyler's remedy?

But if Schuyler ever had an election to receive the money, or the land, it is now determined by the assignment; or, if such parol agreement could even be allowed, it ought to be confined to the time limited in the condition of the mortgage; otherwise it is indefinite, and the mortgagor could never have the benefit of it.

If the court were now to decree a reconveyance, it ought also to order a reference to a master, to ascertain the present value of the lot, and to decree the residue to be paid. A similar rule was adopted in Robinson v. Clute, 2 John. 895, where a tender had not been made in time; and see 1 Fonb. eq. 424.

They observed also, that Meads the assignee, is an innocent purchaser without notice, and would be protected by the court.

Messrs. Spencer and Bleecker for the defendant.

We admit, that parol evidence is not received to alter written agreements; but this rule is subject to exceptions, without which the rule itself would be intolerable. When equity is called upon to exercise its peculiar jurisdiction, by decreeing a specific performance, the party to be charged may be let in to show defensively, and by parol evidence, that under the circumstances, the plaintiff is not entitled to have the agreement specifically performed. Sugden 90.; Joynes v. Statham; 3 Atk. 388.

The principle of this court is, that he who asks equity, must do equity. If the plaintiff rests on a written agreement, the court will receive evidence, that such agreement does not speak the sense of the parties. Lord Hardwicke admitted, that an omission by mistake or surprise, would let in parol evidence,

17

1824.

Meade
v.
Lansingh.

as well as fraud.   3 Atk. 387.; 2 Atk. 33. 98. 254.; Rob.
83.; 2 Ves. 365.; 1 Ves. jun. 545.; 1 Ves. and Beams 168.
If there be fraud, mistake, accident, or surprise, in all these
cases, the evidence is admissible, whether the case be within,
or without the statute of frauds.   No case can be shown where
it has been refused, if offered defensively.   And in Woollam
v. Hearne 7 Ves. 211, the master of the rolls says, if this had
been a bill brought by the defendant, for a specific perform-
ance, I should have been bound by the decisions to let in the
parol evidence.   Rob. on Frauds 81.

So the court will not grant a decree for a specific per-
formance, unless it is satisfied, under all the circumstances,
that it is equitable to give more relief than the plaintiff is en-
titled to at law.   Phillips 499.; see also, the cases cited in
the margin of Townshend v. Stangroon, 6 Ves. 328, and the
remarks of lord Eldon, in p. 332. 336. 338.

Lord Redesdale remarks, in 1 Scho. and Lef. 39., that the
statute does not say that a written agreement shall bind, or be
carried into effect, but that an unwritten one shall not.   In 1
Bro. ch. 338, lord Thurlow admitted parol evidence to show
mistake in an agreement.   It was refused by lord Thurlow in
Irnham v. Child, 1 Bro. ch. 94; and by lord Kenyon when
master of the rolls, 2 Bro. ch. 219.   These however, were
cases where it was offered on the part of the plaintiff.   But
the rejection of the like evidence in a similar case, Hare v.
Sherwood, 1 Ves. jun. 241, called forth the celebrated re-
mark of lord Eldon, upon Mr. justice Buller's too confident
opinion of his own knowledge of all the doctrine of a court of
equity.   6 Ves. 333.; and see Rob. on Frauds 84.

The present application is, to the exclusive and extraordina-
ry jurisdiction of a court of equity.   Redemption can be sought
here only.   Foreclosure can be obtained only in equity.   In
Joynes v. Statham, lord Hardwicke treats this as parallel to
the case of specific performance.   There is a remedy at law,
and equity is not bound to interfere.

In suits for specific performance, equity will always refuse
its discretionary and extraordinary aid, when the justice of
the case through whatever medium it be made to appear, is

on the side of resistance. Rob. 81.; Davis v. Symonds; 1 Cox. 402.

An omission by actual fraud, may be shown by the party asking the aid of the court.   Sugd. 107.; Rob. 84.; Phil. ev. 499.; 1 Ves. 318.   So also, if it were by mistake or misapprehension.   1 Phil. ev. 511.; 1 Day ca. er. 139.; 1 John. ch. 607.   If these cases show some degree of caution and reluctance, in admitting this evidence for the plaintiff when uncorroborated, they leave no doubt where it is supported by circumstances.   Sugd. 111.   So if a settlement is made contrary to the intent of the parties, to prevent a forfeiture. Sugd. 114.; 2 ch. ca. 180.

But this may also be considered as the case of a collateral agreement controlling the instrument; and in that point of view, the evidence is admissible.   The parties intended that the whole agreement should be in writing.

And an agreement concerning lands, may be so waived by a parol agreement, partly executed, that the parol agreement may become a defence against a prayer for a specific performance.   Phillips 583.   And in cases of fraudulent omissions or suppressions of trusts and other provisions, they may be added.   Rob. 80.; 2 Vern. 617.; 1 Bro. ch. 269.

Though parol evidence be not admissible, in many cases, for the direct purpose of varying a written agreement, yet it may be allowed, for the purpose of raising an equity by proof of collateral circumstances.   The lord chancellor says, it is not unusual to affirm the written agreement, and yet to raise an equity, by which it is made a security only for a particular purpose.   You do not impeach the agreement, but you get at this dehors the agreement.   Walker v. Walker, Atk. 98.; 1 Bro. ch. 350.   So parol evidence of facts collateral to the agreement is admissible at law.   8 T. R. 379.; 1 John. ca. 22.; 3 John. 528.; 4 Cranch 219.; and at law the consideration may be inquired into.   20 John. 338.

In Strong v. Stewart, 4 John. ch. 169, the bill was for a redemption against an absolute assignment.   Parol proof was made, which conclusively showed, that the transaction was a loan and not a purchase and sale.   This proof, not merely on the ground of mistake, was allowed, and the redemption de-

creed.  See 1 Day's cases in error, 139. ; 1 Powell on Mortgages 199.  A defeasance by parol is valid between the parties.  6 John. ch. 469.  In such cases, the parol proof is not considered as a variation of the agreement, but only as explanatory of what was meant by the parties.

A mortgage is not considered a conveyance of lands, nor does the case come within the statute of frauds.  The security is but an incident to the debt.  1 Pow. Mort. 187.  189. ; 11 John. 538.  Payment of the debt, destroys the estate.  In ejectment, the mortgage is treated as a mere accessory to the debt.  When the debt is paid, a trust results in favour of the mortgagor.  The assignment of the mortgage without the debt, is a nullity.  19 John. 326.  The mortgagee has but a chattel interest.  4 John. 41 ; 11 John. 534.  It may be proved by parol, that there was no debt ; that the debt is forgiven, transferred, &c.  If the debt is not truly stated, it shall stand for the amount really due.  It may stand as security for future advances, 2 John. ch. 309. ; 7 Cra. 34. 41.  Can we not prove then in this case, what was the real object of this mortgage, and that the defendants are and have been ready to perform it ?

It is objected, that neither fraud, mistake nor accident is set up in the answer.  The reply is that we set forth all the facts, from which some error formerly, and fraud afterwards are to be inferred.  It is fraudulent to make use of these papers, for a purpose contrary to the intent of the parties.

The assignment was an unwarrantable transaction.  The same necessity that led to it, may have led Schuyler to destroy the writing.

The facts in proof, are such as can leave no doubt what was the real nature of the transaction.  The evidence is irrefragable.  Jeremiah Lansingh in embarrassed circumstances, receives a conveyance from David Schuyler of a lot really worth $3000, and that consideration is expressed in the deed.  Wanting to raise $1000, in cash, could he think of buying a lot for $3000 dollars ?  Could it be believed, that he paid $2000, and gave a bond and mortgage for the residue ? or, why were the bond and mortgage for $1000 ?  Schuyler would not have sold the land for less than $3000.  But as

his lot in the hands of Lansingh, was bound for $1000 only, he would naturally ask for no greater security upon the lot of Lansingh, than the same amount.

The order of time in which the papers were executed, shows the same intent. The transactions regarding the two lots are plainly connected. So does also, the forbearance of Schuyler in his life to record the mortgage. And the verbal agreement which the defendants now insist on, was then all for Schuyler's benefit. The remark that Schuyler had no proof of this agreement, goes on the unfounded assumption, that Lansingh would conceal or deny it. He trusted to Lansingh, and they were intimate friends; but how did he stand without the parol agreement? His conduct would have been absurd and unaccountable.

The time is not important. After two years, Lansingh might redeem by performance. As to the payment of interest, it is denied by the answer, and not proved.

There is evidence that a writing existed; that writing must have been left with Schuyler, whose interest it was to keep it. In the change of circumstances it is now the interest of his family, not to produce, but to conceal it.

There is no injustice in this defence: Schuyler's estate will receive its own; and if the lot has depreciated in value, this is properly his loss.

Meads the assignee, is in no better situation than the mortgagee. He takes it subject to all equities. Clute v. Robinson, 20 John. 595.; 2 John. ch. 441. 513. He purchased an unnegotiable security, which was long before payable. This was warning sufficient, to put him upon enquiry.

THE CHANCELLOR. The complainants holding a mortgage, made in the usual form to secure the payment of one thousand dollars, seek satisfaction, by the ordinary suit in this court. The defence is, that Jeremiah Lansingh the mortgagor and David Schuyler the mortgagee, agreed with each other, that the mortgage should be taken and held by Schuyler, only as a security for the reconveyance of another lot of land, which Schuyler had conveyed to Lansingh, and the defendants claiming the benefit of such an agreement, of-

fer to reconvey the other lot. This agreement is not proved by any writing; and is proved, only by oral testimony.

Can oral proof of this agreement, be received? The general rule is, that oral testimony is not received to contradict or vary a written instrument; and the exceptions to this rule, are, that such testimony is received in cases of fraud, mistake or surprise. 1 Johns. ch. 231. 339, and 425.

This seems obviously, not a case either of fraud, mistake, or surprise. The agreement alleged, is, that the mortgage was not what it purports to be, a security for the payment of money; but a security that another lot of land, which had been conveyed by the mortgagee to the mortgagor, should be reconveyed. No time was limited for the reconveyance; and the agreement alleged, is a special contract, entirely different from every thing which Lansingh and Schuyler have expressed and stipulated in their written instruments. The case is altogether unlike any of those which have been treated as frauds or mistakes.

The parol agreement contradicts the terms of the mortgage, and varies essentially, its effect. If this verbal agreement could prevail, the transaction between the mortgagor and the mortgagee, would not be a mortgage for the payment of money, according to the language of the instrument; but it would become a special contract of a very different nature. It would be an executory contract, for mutual reconveyances, at some time and in some manner, which do not appear. When this case is compared with the cases found in the books, it most resembles those in which attempts have been made to obtain a specific performance of a parol contract. To give effect to this agreement, would be nothing less than to destroy the written contract, by substituting a verbal contract in its place; and if a verbal agreement like this, may take the place of written instruments, it is not easy to conceive any case, in which a written contract might not be subverted or varied by oral testimony. The cases in which oral testimony is received to contradict or vary a written instrument, have been sufficiently extended; and no court is now at liberty to make any farther encroachment on the statute of frauds, or upon the salutary

rules of the general law, which exclude oral testimony offer-   
ed to defeat or vary instruments in writing.

If this verbal agreement is inadmissible, it is not necessary   
to discuss or decide any of the other questions which have been
raised in the cause. My opinion is, that this case is governed
by the general rule, and is not within any of the exceptions
concerning the admission of oral testimony to defeat or vary
the effect of a written instrument; and the complainants must
have the usual decree.